The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times.
3. At all relevant times, defendant-employer was a duly qualified self-insured with Claims Management as its third party administrator.
4. The parties stipulated into evidence the Opinion and Award of the Full Commission dated January 17, 2002 and the Industrial Commission Forms 33 33R.
5. The date of plaintiff's admittedly compensable injury was March 24, 1995.
6. Plaintiff's average weekly wage was $247.15, yielding a compensation rate of $164.77 per week.
7. Plaintiff received temporary total disability payments until January 21, 2002.
8. The parties stipulated to the prior medical file of plaintiff.
9. The issues to be decided are whether plaintiff is entitled to payment of ongoing compensation, including temporary total disability and medical compensation since August 12, 1999, and whether plaintiff is permanently and totally disabled as a result of her injury by accident of March 24, 1995.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the first Deputy Commissioner's hearing on April 20, 1999, plaintiff was 38 years old and had earned a GED. On March 24, 1995 plaintiff was employed by defendant as a department manager and sustained an admittedly compensable injury by accident on that date when she slipped and fell, injuring her lower back and buttocks. Defendant accepted plaintiff's claim by filing a Form 60 with the Commission on August 4, 1995. Plaintiff was paid periods of temporary total and temporary partial disability compensation from March 29, 1995 through July 20, 1995. Thereafter, plaintiff returned to work briefly but has not worked since May 1996.
2. Dr. Charles Branch performed spinal fusion surgery on August 20, 1998. After the surgery Dr. Branch recommended that plaintiff have a functional capacity evaluation and then, based on the results, begin vocational rehabilitation. Defendant refused to authorize the FCE and the vocational rehabilitation. Following the first hearing before the Deputy Commissioner, on August 12, 1999 Dr. Branch released plaintiff at maximum medical improvement and assigned a permanent partial disability rating of 18% to her back.
3. The Full Commission entered an Opinion and Award in this matter on January 17, 2002, in which defendant was ordered to pay temporary total disability at a rate of $164.77 per week from July 29, 1997 until August 12, 1999. Because Dr. Branch did not release plaintiff until August 12, 1999, after the testimony had been taken before the Deputy Commissioner, the Full Commission was unable to determine the nature and extent of plaintiff's disability, if any, after August 12, 1999, and therefore reserved this issue for future determination. The Full Commission also ordered defendant to pay for all plaintiff's medical expenses and to provide a functional capacity evaluation and vocational rehabilitation services to plaintiff. In violation of the Full Commission Opinion and Award, defendant failed to provide vocational rehabilitation services to plaintiff and since 1998 has not provided payment for her medical treatment or prescription medications. Plaintiff was forced to pay for her own medical care and medications or depended on Medicare coverage.
4. Eleven months after the Full Commission Opinion and Award, defendant authorized a functional capacity evaluation (FCE), which plaintiff completed on November 27, 2002. The FCE established that plaintiff was capable of working at light-medium physical demand level for an eight-hour day and that the work should allow a sit/stand option. The FCE also recommended that, because plaintiff had been out of work for such a long time, plaintiff should begin work with a ramping schedule starting at four hours per day for the first week and working up to eight hours per day over a four to six week period.
5. Plaintiff's general practitioner, Dr. Florian Ragaz, has continued to treat plaintiff's back condition since August 1999. Dr. Ragaz expressed the opinion that plaintiff's fall in March 1995 accelerated or aggravated plaintiff's preexisting conditions of pars defect and spondylolisthesis. Dr. Ragaz stated that plaintiff has an unstable back and will always have some back pain and increased risk of injury because of the spondylolisthesis. Dr. Ragaz diagnosed plaintiff with fibromyalgia, which he stated was not caused by the injury by accident. The fibromyalgia and failed back syndrome both contribute to plaintiff's chronic pain and disability. Dr. Ragaz explained plaintiff's disability as follows:
 Well, I wouldn't say that she's totally disabled. . . . Can she work a gainful employment so that she can satisfy an employer that she can do even a full time or part-time work? No. However, can she do some type of work that's comparable to what she does at home with her children and with her house . . . then the answer is somewhere in the yes area.
6. Dr. Ragaz did not disagree with the FCE results, but his opinion was that as time evolved, he did not feel that plaintiff could perform at the levels indicated on the FCE. After August 1999 plaintiff continued to have lumbar discomfort. Dr. Ragaz felt that plaintiff needs to be reevaluated on a continuing basis, and will require pain medications and muscle relaxants for ongoing treatment of her low back condition.
7. Dr. Ragaz referred plaintiff to Carolina Orthopaedic Specialists where she was seen by Dr. Larry Anderson and Dr. Ralph Maxy, who found that plaintiff had failed back syndrome. Dr. Maxy referred her to Dr. Gary Dawson at Pain Relief Centers for long-term physical therapy and pain management.
8. On July 17, 2003, Dr. Dawson, a physical medicine and rehabilitation specialist, first examined plaintiff. On September 8 and 24, 2003, Dr. Dawson performed epidural steroid injections, but plaintiff did not have long-term relief. On November 6, 2003, Dr. Dawson felt plaintiff should not pursue further injections, would require medication to control pain, and would require psychological counseling to prevent further reduction in her current functional capacity.
9. In his deposition, Dr. Dawson stated that plaintiff was at maximum medical improvement as of November 6, 2003, but that plaintiff has chronic pain and will continue to need medical treatment, including palliative care, prescription medications, psychological counseling, and other treatment. Dr. Dawson believed that plaintiff could perform light duty work, and agreed with the restrictions stated in the FCE. Dr. Dawson found no evidence of Waddell findings or exaggerated pain behaviors when he examined plaintiff. In a letter dated October 15, 2003, Dr. Dawson explained the impact of plaintiff's pain on her ability to work as follows:
 She has been dealing with some emotional problems related to her pain and is currently being referred to a therapist. However, relating to her ability to function, I would anticipate her to have pain long-term and possibly the remainder of her life. Given the impact of pain in her quality of life, it is reasonable for her to pursue disability. I would agree . . . that she is disabled.
10. At the October 27, 2003 Deputy Commissioner's hearing, plaintiff testified that she had some relief from the August 1998 surgery, but that she still had significant lower back and leg pain which had progressively worsened. Because of the chronic pain, plaintiff has difficulty sleeping and is able to sleep only about four hours a night. She is on pain medication and muscle relaxants. Plaintiff testified that she wakes up in pain every morning and even after taking the pain medication, there are not many times during the day that she is not in pain. When asked whether she was able to work, plaintiff responded that she was unable to keep a schedule, "being on a job at a certain time, sitting long periods of time or standing."
11. Defendant has never offered any suitable employment to plaintiff within the restrictions imposed by her physicians or in the FCE. Although defense witness Tembila Covington testified that Wal-Mart stores have jobs available that are consistent with plaintiff's restrictions, no physician or vocational expert has identified suitable jobs that are available for plaintiff and that plaintiff is capable of obtaining, taking into account her physical and vocational limitations.
12. Defendant paid plaintiff temporary total disability compensation until January 21, 2002.
13. As the result of the compensable injury by accident, plaintiff was disabled from any employment during the period August 12, 1999 until she reached maximum medical improvement as determined by Dr. Dawson on November 6, 2003. Thereafter, plaintiff was capable of some work at the light duty level, but the Commission finds that it would be futile for plaintiff to attempt to find employment without the assistance of a vocational rehabilitation professional, in light of plaintiff's chronic pain, the medical evidence of her disability, her work restrictions according to the FCE including the ramping schedule, and her limited education. As of the October 27, 2003 hearing before the Deputy Commissioner, defendant had not provided any vocational rehabilitation services for plaintiff as ordered in the January 17, 2002, Full Commission Opinion and Award.
14. Plaintiff is in need of and would benefit from chronic pain treatment, psychological counseling, and a vocational rehabilitation program. Defendant's failure to comply with the previous Commission order to provide vocational rehabilitation deprived plaintiff of assistance in the goal of returning to suitable employment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendant admitted the compensability of plaintiff's injury by accident by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
2. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russellv. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
 3. In the present case, plaintiff reached maximum medical improvement on November 6, 2003 and was released to return to light work with restrictions. Although plaintiff is capable of some work, it would be futile for her to seek employment without the assistance of a vocational rehabilitation professional based upon the medical evidence of her disability, her chronic pain, her work restrictions according to the FCE including the ramping schedule, the extended length of time that plaintiff has been out of work, and her limited education. Thus, plaintiff has produced evidence that she continues to be disabled. Defendant did not produce competent evidence that suitable jobs are available and that plaintiff is capable of obtaining a suitable job, taking into account her physical and vocational limitations. Demery v. Perdue Farms, Inc., supra;Russell v. Lowes Product Distribution, supra.
4. Therefore, plaintiff is entitled to total disability benefits at the rate of $164.77 per week from August 12, 1999 and continuing until further Order of the Commission or until plaintiff returns to work. N.C. Gen. Stat. § 97-29. Defendant is entitled to a credit for temporary total disability compensation already paid to plaintiff during the period August 12, 1999 until January 21, 2002.
5. Defendant failed to provide vocational rehabilitation as ordered by the Full Commission in the January 17, 2002 Opinion and Award. Defendant shall provide said vocational rehabilitation to assist plaintiff in returning to gainful employment. N.C. Gen. Stat. § 97-25.
6. Plaintiff is entitled to payment by defendant of all reasonably necessary medical expenses incurred by plaintiff for treatment of her injuries so long as said treatment effects a cure, gives relief, or tends to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19);97-25. The approved medical treatment includes pain management and psychological counseling. In that the medical records show a substantial risk of the necessity of future medical compensation, plaintiff is entitled to payment of future necessary medical compensation pursuant to N.C. Gen. Stat. § 97-25.1.
7. The record is unclear whether defendant has complied with the previous Commission order to pay medical expenses, and therefore the Commission needs additional evidence to determine whether the medical expenses have already been paid.
8. Plaintiff is entitled to a 10% penalty plus interest to be paid by defendant on any medical bills that were paid more than 60 days after they became due. N.C. Gen. Stat. §§ 97-18(i), -86.2.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees awarded below, defendant shall pay plaintiff total disability benefits at the rate of $164.77 per week from August 12, 1999 and continuing until further Order of the Commission or until plaintiff returns to work. The portion of this amount that has accrued shall be paid in a lump sum. Defendant is entitled to a credit for disability compensation already paid during the period from August 12, 1999 until January 21, 2002.
2. Defendant shall pay the reasonable medical expenses incurred or to be incurred by plaintiff that tend to effect a cure, give relief, or lessen plaintiff's period of disability, including services provided by Dr. Ragaz, Dr. Dawson, Dr. Fitzgerald, Dr. Moody, Dr. Branch and Baptist Medical Center. The approved medical expenses include pain management and psychological counseling.
3. Any past due medical bills are subject to a 10% late penalty plus interest pursuant to N.C. Gen. Stat. §§ 97-18(i), 97-86.2.
4. Defendant shall provide vocational rehabilitation services as previously ordered by the Full Commission to assist plaintiff in returning to gainful employment.
5. Defendant shall pay to plaintiff's attorney 25% of all total disability benefits awarded to plaintiff in paragraph 1 of this Award.
6. FURTHER, IT IS ORDERED that defendant shall provide to the Commission within 30 days of the date of this Opinion and Award documentation concerning whether payment has been made as previously ordered in the January 17, 2002 Full Commission Opinion and Award to Drs. Branch and Moody, including plaintiff's surgery. Plaintiff shall have a period to respond to this submission, after which the Commission shall determine whether contempt proceedings should proceed against defendant for the failure to comply with the Commission Opinion and Award.
7. Defendant shall pay the costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________________ DIANNE C. SELLERS COMMISSIONER